UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EDWARD GALLAGHER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-02196-X |
| | § | |
| COLBY VOKEY, COLBY VOKEY P.C., | § | |
| PHILLIP STACKHOUSE, and | § | |
| UNITED AMERICAN PATRIOTS INC., | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

This controversy stems from a disputed legal-services arrangement. The United States Navy court-martialed Navy SEAL Edward Gallagher for murder. Gallagher retained Colby Vokey and Phillip Stackhouse to defend him. Vokey alleges that Gallagher owes legal fees. Gallagher alleges that United American Patriots, Inc. was supposed to pay his bill. Vokey sued Gallagher. And then Gallagher sued Vokey, Stackhouse, and United American Patriots.

Vokey's motion to stay and compel arbitration and Stackhouse and United American Patriots' motions to dismiss are before the Court. Because there is a dispute regarding the validity of a purported contract (and not simply a challenge to the arbitration clause within the contract), the Court **DENIES** Vokey's motion to stay and compel arbitration [Doc. No. 11]. The Court also **DENIES** United American Patriots' motions to dismiss because it is a necessary party to this action [Doc. No. 15].

1

The Court also **DENIES** Stackhouse's motions to dismiss [Doc. No. 19] because he is also a necessary party to this action.

## I.  Background

In early 2018, Navy SEAL Chief Petty Officer Edward Gallagher learned he was under investigation for several crimes, including murder.   The accusations stemmed from events that occurred during his 2017 combat deployment to Mosul, Iraq.

Upon learning of the investigation, Gallagher hired Texas attorney Colby Vokey and his firm Colby Vokey P.C.   Gallagher states that due to his limited financial resources as an enlisted sailor in the Navy, he hired Vokey because of Vokey's prior military service and reputation within the SEAL community. Gallagher claims that Vokey had made it known to the SEAL community that he could represent SEALs charged with combat-related crimes for free, due to his relationship with United American Patriots—a non-profit veterans legal defense fund.

Gallagher asserts that Vokey promised him that United American Patriots would pay for all the legal fees associated with Gallagher's defense.   Gallagher claims that Vokey assured him that, as a member of the United American Patriots Board of Directors,[1] Vokey would ensure that United American Patriots paid for Gallagher's

---

[1] David Gurfein, CEO of United American Patriots, contends Vokey was not on the Board of Directors but on an advisory board.  United American Patriots states that "when attorneys were on the UAP's Board of Directors they were not eligible to vote on, nor make decisions related to, any matter which they may be representing or litigating."  Gallagher's Complaint ¶ 94 [Doc. No. 1].  As of the filing of the complaint, Gallagher asserts Vokey is listed as a board member for United American Patriots in filings with the North Carolina Secretary of State.

legal fees.  In April 2018, Vokey assisted Gallagher in filling out United American Patriots' application for funding, which United American Patriots accepted and both Gallagher and Vokey signed.

Gallagher asserts that from this application United American Patriots is contractually bound to pay any legal fees owed to Vokey.  The heading of one of the United American Patriots forms states: "This is a Legal Contract Read carefully."[2] United American Patriots alleges that it does not enter into contracts with attorneys and did not have an agreement to pay for Gallagher's defense.  Gallagher claims that under the terms of the purported contract, United American Patriots is responsible for paying for his defense and was responsible for submitting payments to Vokey.

At some point between April and June 2018, Vokey brought in Phillip Stackhouse to assist in preparing Gallagher's defense.  No documentation was signed with Stackhouse at this time regarding how he would be paid, and Gallagher claims that Vokey assured him that Stackhouse would also be paid by United American Patriots.  Around September 2018, Gallagher was placed in pretrial confinement in a naval brig.

On October 7, 2018, while Gallagher was confined, Vokey drafted and signed a client engagement letter, which contained the arbitration provision at issue here. Gallagher's signature (dated October 11) is also on the letter.  Gallagher questions the document's authenticity and claims he does not recall signing the document.

---

[2] Gallagher's Response Brief to United American Patriots' Motion to Dismiss, at 7 [Doc. No. 38-1].

As evidence, Gallagher asserts that on October 11 there are no visitors logged visiting him in the naval brig.  Gallagher also questions why Vokey did not present the letter on October 10, when Gallagher and his wife met with Vokey in the Navy Defense Services Office.  Vokey contends that Gallagher did sign the letter, but that the date is incorrect.  Vokey claims the correct date is October 13, not October 11, and the discrepancy is merely a typographical error.  Vokey signed an affidavit stating this, as did John Keagan Riley—a lawyer who worked for Vokey.

Between November 2018 and March 2019, the relationship between Gallagher, United American Patriots, and Vokey soured.  In March 2019, Gallagher terminated his relationship with United American Patriots and Vokey.  The termination did not apply to Stackhouse, whom Gallagher retained as his legal counsel.

On March 19, Stackhouse and Gallagher signed a Legal Services Contract. The contract contains a choice-of-law provision naming California as the venue and law to apply.  There is also an arbitration provision requiring resolution of any disputes in San Diego, California, except against collection actions taken by "the Firm."  On April 16, 2019, Stackhouse and Gallagher ended their relationship, and Gallagher replaced Stackhouse with new counsel.  In July 2019, Gallagher was acquitted of all serious charges in his Navy court-martial.

Then, on or about August 1, 2019, Vokey sent an arbitration demand to Gallagher. The demand seeks fees of up to one million dollars.  On August 8, Timothy Parlatore, Gallagher's new attorney, informed Vokey that there would be no

arbitration.  Parlatore also told Vokey that Gallagher would be filing a lawsuit in federal court.

On August 16, 2019, Vokey filed a lawsuit against Gallagher in Dallas County Court, seeking damages of not less than $200,000 and possibly over $1 million.  On September 13, Gallagher filed this case and removed Vokey's state-court case to federal court.

In this case, Gallagher seeks a declaratory judgment against Vokey, United American Patriots, and Stackhouse, stating that Gallagher does not owe Vokey or Stackhouse any fees, and that if any fees are owed United American Patriots is obligated to pay them.  Gallagher also asserts against Vokey a breach of fiduciary duty and seeks punitive damages (to be determined at trial).  Gallagher also alleges against Vokey and Stackhouse legal malpractice and seeks punitive damages (at trial) of not less than $1 million.

## II.  Vokey's Motion to Stay Litigation and Compel Arbitration

### A. Legal Background

To compel arbitration, the Court must first determine whether the parties agreed to arbitrate the dispute.[3]  To do this, courts ask "(1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute in question falls within the scope of that arbitration agreement."[4]  Federal policy favors arbitration.[5]  But because "arbitration is simply a matter of contract between the

---

[3] *Gross v. GGNSC Southaven, LLC*, 817 F.3d 169, 176 (5th Cir. 2016).

[4] *Id.*

[5] *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013).

parties," the first step of the analysis—the validity of an agreement—is governed by state law contract principles.[6]  Both Gallagher and Vokey appear to agree that Texas law applies to this dispute.  Texas courts "repeatedly express[] a strong presumption favoring arbitration;" however, this "presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists."[7]  Both the Texas Supreme Court and the Fifth Circuit have recognized that when a party disputes the validity of a signed arbitration agreement, the Court must resolve whether there is a valid agreement.[8]  "Only at the second step of the analysis— determining the scope of the arbitration agreement—do courts apply the federal policy favoring arbitration and resolve ambiguities in favor of arbitration."[9]

## B. Analysis

In this case, Mr. Vokey asserts that there is a valid client-engagement agreement (containing an arbitration provision) with Gallagher and, as a result, the Court should stay litigation and compel arbitration between Gallagher and Vokey. Gallagher contests the validity of the client-engagement document containing the

---

[6] *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

[7] *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

[8] *See Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211 (5th Cir. 2003). "Refusing to order arbitration of a dispute where one of the parties claims that it never signed the agreement, and therefore never agreed to anything, is consistent with the Supreme Court's pronouncements that arbitration does not require parties to arbitrate when they have not agreed to do so, and that [a]rbitration under the FAA is a matter of consent, not coercion." *Id.* at 216 (quotation marks omitted) (alteration in original).  "We therefore conclude that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute." *Id.* at 219.  *See also In re Morgan Stanley & Co.*, 293 S.W.3d 182 (Tex. 2009) ("Given the overwhelming weight of authority, it is apparent to us that the formation defenses identified in *Buckeye* are matters that go to the very existence of an agreement to arbitrate and, as such, are matters for the court, not the arbitrator.").

[9] *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014).

arbitration clause.  Gallagher say he does not recall signing the document and claims he did not agree to arbitration.  From the Court's perspective, the date discrepancy combined with the brig visitor logs lends credibility to the possibility that there may not be a valid engagement agreement.  The Court is also mindful of the possibility of a typographical error, as Vokey posits.  Following the Fifth Circuit's guidance in *Will-Drill Resources Inc. v. Samson Resources Co.*,[10] the Court must determine if there is a valid agreement.  At this time, the Court takes no position on the validity of the engagement document.  There is a genuine dispute over the validity of the document, and the Court cannot determine if the parties agreed to arbitrate at this stage of the proceeding.  And so the Fifth Circuit prohibits the Court from forcing arbitration at this time on a party who may not have agreed to arbitrate.  For this reason, the Court **DENIES** defendant Vokey's motion to stay litigation and compel arbitration.

### III.  United American Patriots and Stackhouse's Motions to Dismiss

#### A.  Rule 12(b)(1)

##### i. Legal Background

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[11]  Article III, section 2, of the U.S. Constitution provides that the judicial power of the federal courts extends only to "cases" and "controversies."[12]  The Supreme Court has explained that under the Declaratory

---

[10] 352 F.3d 211 (5th Cir. 2003).

[11] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[12] U.S. CONST. art. III, § 2.

Judgment Act "a case of actual controversy" refers to the cases and controversies under Article III.[13] "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."[14]

To prove such an injury, the Supreme Court and Fifth Circuit have held that "a claimant must present (1) an actual or imminent injury that is concrete and particularized, (2) fairly traceable to the defendant's conduct, and (3) redressable by a judgment in the plaintiffs favor."[15]  The burden of proving these elements is borne by the party invoking federal jurisdiction.[16]  Additionally, to survive a motion to dismiss, "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim."[17]  "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[18]

---

[13] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

[14] *Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) (quotation marks omitted).

[15] *Duarte ex rel. Duarte v. Lewisville*, 759 F.3d 514, 517 (5th Cir. 2014).

[16] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

[17] *Id.* (quotation marks omitted) (alteration in original).

[18] *Ramming*, 281 F.3d at 161.

ii. United American Patriots Analysis

United American Patriots claims that Gallagher does not have standing to sue under the declaratory judgment act, and so it seeks dismissal under 12(b)(1) for lack of subject-matter jurisdiction.   But taking Gallagher's assertions as true, United American Patriots did cause a redressable injury to Gallagher by not paying his legal defense bills.   From the evidence offered by Gallagher, it is plausible that there was an agreement for United American Patriots to pay Gallagher's legal fees.   Working through the three elements the Supreme Court and the Fifth Circuit established, there is an actual, particularized injury traceable to United American Patriots' conduct—failure to pay Gallagher's legal fees.   United American Patriots' failure left Gallagher exposed to responsibility for legal bills it appears he was assured he would not have to pay.   If the Court issues a judgment in favor of Gallagher, relief would be provided for that injury.   Following these steps, the logical conclusion is that Gallagher has standing to file a declaratory-judgment action against United American Patriots.   Whether Gallagher prevails on these allegations is yet to be determined.   Accordingly, the Court **DENIES** United American Patriots' motion to dismiss for lack of standing.

iii. Stackhouse Analysis

Stackhouse similarly alleges that Gallagher does not have standing to sue under the declaratory judgment act, and so it also seeks dismissal under Rule 12(b)(1).   Applying the same three-step analysis to Stackhouse, Gallagher appears to have standing.   While Stackhouse has not filed any legal action against Gallagher,

Gallagher asserts that Stackhouse has presented billing statements and is demanding payment, which makes this a particularized threat of injury. Stackhouse has invoiced Gallagher for money that Gallagher disputes he owes, and so the threat is traceable to the conduct of Stackhouse. And if the Court were to grant a judgment in Gallagher's favor, Gallagher would be relieved of the threat of injury from a threatened legal action or the possibility of being forced to pay a sum he disputes. For these reasons the Court **DENIES** Stackhouse's motion to dismiss under 12(b)(1).

### B. Rule 12(b)(2)

### i. Legal Background

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."[19] When the district court rules on the motion without an evidentiary hearing, the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper.[20] Moreover, on a "motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists."[21]

In a suit arising out of diversity, a federal court may exercise personal jurisdiction over a nonresident defendant if "(1) the long-arm statute of the forum

---

[19] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

[20] *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

[21] *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution."[22]   Since Texas's long-arm statute extends to the U.S. Constitution's limits, the question left to resolve is whether exercising personal jurisdiction over the defendant offends the Fourteenth Amendment of the U.S. Constitution.[23]

Regarding the Fourteenth Amendment,

The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice.[24]

Minimum contacts can be classified two ways: general or specific.[25] A court may exercise general personal jurisdiction when a defendant's contacts with the forum state are "continuous and systematic."[26]   Specific jurisdiction can be exercised when a "nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action."[27]   The defendant "must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of

---

[22] *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

[27] *Wilson*, 20 F.3d at 647.

the 'unilateral activity of another party or third person.'"[28]   The Fifth Circuit has

articulated a three-step analysis for specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state,
> *i.e.*, whether it purposely directed its activities toward the forum state
> or purposefully availed itself of the privileges of conducting activities
> there; (2) whether the plaintiff's cause of action arises out of or results
> from the defendant's forum-related contacts; and (3) whether the
> exercise of personal jurisdiction is fair and reasonable.[29]

"Once a plaintiff has established minimum contacts, the burden shifts to the

defendant to show the assertion of jurisdiction would be unfair."[30]   Once minimum

contacts are established, to show that an exercise of jurisdiction is unreasonable "the

defendant must make a 'compelling case' against it.  It is rare to say the assertion is

unfair after minimum contacts have been shown."[31]   The factors considered when

analyzing fairness are: "(1) the burden on the nonresident defendant, (2) the forum

state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the

interstate judicial system in the efficient administration of justice, and (5) the shared

interest of the several states in furthering fundamental social policies."[32]

### ii. United American Patriots Analysis

In this case, United American Patriots denies that the United States District

Court for the Northern District of Texas has personal jurisdiction, and it seeks

---

[28] *McFadin,* 587 F.3d at 759 (quoting *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871–72 (5th Cir. 1999)).

[29] *McFadin,* 587 F.3d at 759.

[30] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

[31] *Id.*

[32] *McFadin*, 587 F.3d at 760.

dismissal under Rule 12(b)(2). The Court finds, however, that specific jurisdiction over United American Patriots in the Northern District of Texas is proper. Through its relationship with Vokey, United American Patriots has established minimum contacts in Texas. United American Patriots has sent to Vokey (at his Dallas office) several payments, as well as invoices and communications. It cannot be said that this was a random or fortuitous relationship or the act of a third party. United American Patriots and Vokey have a long history, and when United American Patriots agreed to pay Vokey on Gallagher's behalf, United American Patriots knew that Vokey was a Texas attorney. And payment (or the lack thereof) to Vokey, in Texas, is the heart of this dispute and the cause of this action.[33]

The next step is to determine if exercising specific jurisdiction over United American Patriots will "offend traditional notions of fair play and substantial justice."[34] As Gallagher correctly points out, this Court held in *CSFB 1998-C2 Facilities, LLC v. Rector*[35] that travel to and from the forum are not enough to make exercising specific jurisdiction unreasonable.[36] And because all of the parties necessary to this case have made an appearance in Texas, judicial efficiency is promoted by keeping all parties in the case. For these reasons, the Court **DENIES** United American Patriots' motion to dismiss for lack of personal jurisdiction.

---

[33] Because there is specific jurisdiction, it is not necessary for the Court to analyze general jurisdiction.

[34] *Clemens*, 615 F.3d at 378.

[35] 2015 WL 1003045 (N.D. Tex. Mar. 5, 2015) (Lynn, J.).

[36] *Id*. at *6.

### iii. Stackhouse Analysis

Stackhouse similarly disputes personal jurisdiction in the Northern District, and it also seeks dismissal under Rule 12(b)(2). Applying the same jurisdictional analysis to Stackhouse, the Court finds that it also has personal jurisdiction over Stackhouse. There is no evidence that Stackhouse has systematic or continuous connections to warrant general jurisdiction over him. But Stackhouse has sufficient minimum contacts with Texas for the Court to exercise specific personal jurisdiction over him. The fact that Stackhouse agreed to work with Vokey—a Texas lawyer—and received payment for this relationship makes this exercise of personal jurisdiction not the result of a random or fortuitous relationship or the act of a third party but as a direct result of Stackhouse's actions. And, as mentioned with United American Patriots, the dispute of payment to a Texas attorney is what gives rise to this action. Additionally, for the same reasons listed for United American Patriots, exercising jurisdiction over Stackhouse does not offend traditional notions of fair play and substantial justice. As a result, the Court **DENIES** Stackhouse's motion to dismiss for lack of personal jurisdiction.

### C. Rule 12(b)(6)

### i. Legal Background

Motions to dismiss for failure to state a claim under Rule 12(b)(6) "are viewed with disfavor and are rarely granted."[37] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its

---

[37] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

face.'"[38]   "Factual allegations must be enough to raise a right to relief above the speculative level."[39]   In making its decision, the "court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff,"[40] "even if doubtful in fact."[41]

### ii. United American Patriots Analysis

In this case, United American Patriots bases its 12(b)(6) motion to dismiss on its argument that it does not have a contract with Gallagher and that there is a separate case pending in this Court between Gallagher and Vokey, subject to an arbitration clause.  Gallagher alleges, however, that there is a contract with United American Patriots.  And from the facts alleged, it is plausible that there was either an agreement for United American Patriots to pay Gallagher's legal bills or that Vokey assured Gallagher that he would not be personally liable for any legal bills because United American Patriots would cover the expenses.  The Court has already detailed above that it has not decided the validity of a client agreement between Gallagher and Vokey, and so it is not going to compel arbitration under that agreement at this time.  Additionally, when the case styled *Colby Vokey and Colby C. Vokey, P.C. v. Edward Gallagher,* Cause No. 3:19-cv-02199-X, was combined with this case, this action became the only vehicle to provide a remedy to Vokey and Gallagher,

---

[38] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[39] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[40] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[41] *Twombly*, 550 U.S. at 556.

and United American Patriots is an integral party to this remedy. As such, the Court **DENIES** United American Patriots' 12(b)(6) motion to dismiss.

### iii. Stackhouse Analysis

Stackhouse bases his Rule 12(b)(6) motion to dismiss on Gallagher not having standing under the declaratory judgment act and that Gallagher cannot prove there was a legal malpractice claim because he was not convicted in his criminal trial. In its reasoning on the Rule 12(b)(1) motion, the Court explained that Gallagher has standing to bring an action under the declaratory judgment act.

For his lack of standing for a legal malpractice claim, Stackhouse relies on *Peeler v. Hughes & Luce*[42] to say that Gallagher cannot bring a legal malpractice claim because he was found not guilty in his criminal trial. The Court disagrees with Stackhouse's reading of the case. According to *Peeler*, if a defendant is convicted of a criminal act, the only way a defendant can sue for legal malpractice is if the defendant is subsequently exonerated.[43] Without exoneration, the convicted defendant cannot prove damages. *Peeler*, however, does not preclude a defendant found not guilty from establishing damages and bringing a legal malpractice claim against his or her attorney. As such, the Court finds that Gallagher has stated a claim on which relief could be granted, and the Court **DENIES** Stackhouse's motion to dismiss under Rule 12(b)(6).

---

[42] 909 S.W.2d 494 (Tex. 1995).

[43] *See id.* at 497–98 ("[W]e side with the majority of courts and hold that plaintiffs who have been convicted of a criminal offense may negate the sole proximate cause bar to their claim for legal malpractice in connection with that conviction only if they have been exonerated on direct appeal, through post-conviction relief, or otherwise.").

IV. United American Patriots' 12(b)(3) Motion to Dismiss

When deciding a Rule 12(b)(3) motion to dismiss for improper venue, the Court must view "all the facts in a light most favorable to the plaintiff."[44]  28 U.S.C. 1391 states:

> (b) Venue in General.—A civil action may be brought in—

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Because none of the defendants are residents of Texas, and many of the events giving rise to this action took place outside of this Court's district, venue under § 1391(b)(1) or (b)(2) is not applicable.  In any event, these two sentences are the sum total of United American Patriots' venue arguments: "Venue in the Northern District of Texas is improper as to [United American Patriots] because none of the three venue requirements under 28 U.S.C. § 1391 has been satisfied.  Therefore, Plaintiff's claims against [United American Patriots] must be dismissed pursuant to Fed. R. Civ. P. 12(b)(3)."  This is insufficient to demonstrate that subsections (b)(1) and (b)(2) establish venue elsewhere.  Additionally, the alleged facts do not show that the case

---

[44] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009).

could be brought in another court.  And even if they did, the proper remedy would be a transfer under section 1404 rather than a dismissal under Rule 12(b)(3).

For these reasons, the Court **DENIES** United American Patriots' motion to dismiss for improper venue.

V. Conclusion

For the reasons stated above, the Court **DENIES** Vokey's motion to stay litigation and compel arbitration.  The Court also, for the reasons stated above, **DENIES** United American Patriots and Stackhouse's motions to dismiss.

**IT IS SO ORDERED** this 1st day of September 2020.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

18